UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>$1,478,991.75 OF FUNDS IN THE NAME OF MARITIME ASSISTANCE LLC.; and<br><br>$1,478,991.74 OF FUNDS IN THE NAME OF MARITIME ASSISTANCE LLC.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. _____ |

## UNITED STATES' VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

COMES NOW, Plaintiff the United States of America, by and through the United States Attorney for the District of Columbia, and brings this verified complaint for forfeiture in a civil action *in rem* against the defendant properties, namely: (1) $1,478,991.75 of funds in the name of Maritime Assistance LLC held at U.S. Bank 1 and (2) $1,478,991.74 of funds in the name of Maritime Assistance LLC. held at U.S. Bank 1. (the "Defendant Funds");[1] and alleges as follows.

## NATURE OF ACTION AND THE DEFENDANT IN REM

1.      This *in rem* forfeiture action arises out of an investigation by the Federal Bureau of Investigation ("FBI"), of a scheme to launder funds via U.S. correspondent accounts as part of an illicit procurement network for the purpose of evading U.S. sanctions related to Syria. Joint Stock Company Sovfracht ("Sovfracht"), Maritime Assistance LLC ("Maritime"), and their co-conspirators employed sophisticated evasion techniques and front companies in dealing with the

---

[1]      The Defendant Funds are held in a blocked funds account.

U.S. financial system to disguise the true nature of their illicit business dealings, as well as to protect and promote the on-going illicit procurement scheme.  Their actions evidence a long-term conspiracy to illegally procure items for, or on behalf of, sanctioned entities, in violation of the International Emergency Economic Powers Act ("IEEPA") and the federal money laundering statute.

2.     The Defendant Funds are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C), as property constituting or derived from proceeds traceable to violations of IEEPA, codified at 50 U.S.C. § 1701 *et seq.*  In addition, the Defendant Funds are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A), as property involved in, and traceable to violations of IEEPA, in violation of 18 U.S.C. §§ 1956(h), 1956(a)(2)(A).

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355.

4.     Venue is proper pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts and omissions giving rise to the forfeiture took place in the District of Columbia.  The Defendant Funds are currently in bank accounts at a bank in the United States (U.S. Bank 1).  The coconspirators (identified below) failed to seek licenses from the Office of Foreign Asset Controls ("OFAC"), which is located in Washington, D.C., for conducting transactions with these funds, in violation of U.S. law.  Venue is also proper pursuant to 28 U.S.C. § 1355(b)(2), because at the time the transactions and seizures occurred, the properties were part of a compound transaction that began in a foreign country.

## STATUTORY FRAMEWORK

I.   **THE IEEPA AND RELATED EXECUTIVE ORDER REGARDING SYRIA**

5.      This civil forfeiture action relates to violations of the regulations and Executive Orders issued pursuant to IEEPA, codified at 50 U.S.C. § 1701 *et seq.*  IEEPA gives the President certain powers, defined in Section 1702, to deal with any threats with respect to which the President has declared a national emergency, and prescribes criminal penalties for violations thereunder. See 50 U.S.C. § 1705(a).  A conspiracy to violate IEEPA is prohibited by 18 U.S.C. § 371.

6.      According to Executive Order (hereinafter "E.O.") 13582, "Blocking Property of the Government of Syria and Prohibiting Certain Transactions With Respect to Syria," all property and interests in property of those individuals and entities designated by E.O. 13582, which are in the United States, which hereafter come into the United States, or which are or hereafter come within the possession of a United States person, are blocked.

7.      Entities designated by E.O. 13582 include (i) the Bashar al-Assad ("Assad") led Government of Syria, including all of its agencies, instrumentalities, and controlled entities; (ii) any person determined by the Secretary of the Treasury "to have materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services in support of, any person whose property and interests in property are blocked pursuant to" E.O. 13582; and (iii) any person determined by the Secretary of the Treasury "to be owned or controlled by, or to have acted or purported to act for or on behalf of, directly or indirectly, any person whose property and interests in property are blocked pursuant to" E.O. 13582.

8.      In effect, these authorities bar any and all designated entities from transacting in United States dollars, when such transactions pass through correspondent banks in the United States.

9.      Additionally, any transaction within the United States which evades or avoids, has the purpose of evading or avoiding, or attempts to violate any of the prohibitions set forth in E.O. 13582 is similarly prohibited.

10.     IEEPA makes it a crime to attempt to commit, conspire to commit, or aid and abet in the commission of any violation of E.O. 13582.

## II.     MONEY LAUNDERING STATUTE

11.     Pursuant to 18 U.S.C. § 1956(a)(2)(A) (the international promotional money laundering statute) it is a violation to transport, transmit, and transfer, and attempting to transport, transmit, and transfer a monetary instrument or funds, *inter alia*, to a place in the United States from or through a place outside the United States with the intent to promote the carrying on of specified unlawful activity.

12.     Pursuant to 18 U.S.C. § 1956(c)(7)(D), the term "specified unlawful activity," includes a violation of the penalties of IEEPA.

13.     Pursuant to 18 U.S.C. § 1956(h), it is a violation to conspire to violate Section 1956.

## III.    THE FORFEITURE STATUTE

14.     Pursuant to 18 U.S.C. § 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of IEEPA is subject to forfeiture.

15.     Pursuant to 18 U.S.C. § 981(a)(1)(A), any property, real or personal, involved in a transaction or attempted transaction, in violation of 18 U.S.C. § 1956, or any property traceable to such property is subject to civil forfeiture.  Forfeiture pursuant to this statute applies to a larger class of property than forfeiture under 18 U.S.C. § 981(a)(1)(C) because it applies to more than just the proceeds of the crime. Money laundering forfeiture is required for all property "involved

in" the crime, which can include clean or legitimate money that is comingled with tainted money derived from illicit sources.

## FACTS GIVING RISE TO FORFEITURE

### I.   BACKGROUND

#### A.   Syrian Sanctions

16.     On May 11, 2004, the President issued Executive Order 13338, declaring a national emergency to deal with the unusual and extraordinary threat to national security, foreign policy, and economy of the United States posed by the actions of the Government of Syria in supporting terrorism, continuing its occupation of Lebanon, pursuing weapons of mass destruction and missile programs, and undermining United States and international efforts with respect to the stabilization and reconstruction of Iraq. Executive Order No. 13338 has been continued and expanded by Executive Order Nos., 13399, 13460, 13572, 13573, 13582, 13606, and 13608 (collectively, the "Syria Executive Orders").

17.     The Syria Executive Orders imposed economic sanctions on Syria. They prohibited, among other things, the exportation, re-exportation, sale, or supply, directly or indirectly, to Syria of any goods, technology, or services from the United States or by a United States person. The Syria Executive Orders also prohibited any transaction by any United States person or within the United States that evaded or avoided, or had the purpose of evading or avoiding, any prohibition set forth in the Syria Executive Orders.

18.     The Syria Executive Orders authorized the United States Secretary of the Treasury, in consultation with the United States Secretary of State, "to take such actions, including the promulgation of rules and regulations, as may be necessary to carry out" these sanctions against Syria. Pursuant to this authority, the Secretary of the Treasury, through the Office of Foreign

Assets Control ("OFAC"), promulgated the Syrian Sanctions Regulations, 31 C.F.R. Part 542, implementing the sanctions required by the Syria Executive Orders. The conduct described herein was unlawful under the Syrian Sanctions Regulations.  The conduct described herein was unlawful under the Syria Related Sanctions Regulations.

19.     Specifically, absent permission from OFAC in the form of a license, the Syrian Sanctions Regulations prohibited, among other things:

a.      The exportation, re-exportation, sale, or supply, directly or indirectly, from the United States, or by a United States person, wherever located, of any services to Syria;

b.      Any transaction by a U.S. person or within the United States that evades or avoids, has the purpose of evading or avoiding, causes a violation of, or attempts to violate any of the prohibitions set forth in the regulations;

c.      United States persons, wherever located, from approving, financing, facilitating, or guaranteeing a transaction by a foreign person where the transaction by that foreign person would be prohibited by the Regulations if performed by a United States person or within the United States;

d.      Transactions in property that was in the United States, came within the United States, or that was or came within the possession or control of any United States person, including any foreign branch, of the Government of Syria or any other person whose property and interests in property are blocked;

e.      Transactions involving persons who materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services in support of, the Government of Syria or any other person whose property and interests in property are blocked; and

f.      Transactions involving blocked property owned or controlled by, directly or indirectly, the Government of Syria or any other person whose property and interests in property are blocked.

**B.      Ukrainian and Crimea Region Sanctions**

20.      Beginning on March 6, 2014, the President issued Executive Order 13660 declaring a national emergency to deal with the threat posed by the actions and policies of certain persons who had undermined the democratic process and institutions in Ukraine; threatened the peace, security, stability, sovereignty, and territorial integrity of Ukraine; and contributed to the misappropriation of Ukraine's assets. Executive Orders No. 13660 has been continued and expanded by Executive Order Nos., 13661, 13662, and 13685 (collectively, the "Ukraine Executive Orders").

21.      The Ukraine Executive Orders together authorize, among other things, the imposition of sanctions against: persons responsible for or complicit in certain activities with respect to Ukraine; officials of the Government of the Russian Federation; persons operating in the arms or related material sector of the Russian Federation; individuals and entities operating in the Crimea region of Ukraine; and entities operating in specified sectors of the Russian Federation economy. The Ukraine Executive Orders also prohibit the importation or exportation of goods, services, or technology to or from the Crimea region of Ukraine, and prohibits new investment in the Crimea region of Ukraine by a U.S. person, wherever located.

22.      The Ukraine Executive Orders authorized the United States Secretary of the Treasury, in consultation with the United States Secretary of State, "to take such actions, including the promulgation of rules and regulations . . . as may be necessary to carry out the purposes of this Order." Pursuant to this authority, the Secretary of the Treasury, through the Office of Foreign

Assets Control ("OFAC"), promulgated the Ukraine Related Sanctions Regulations, 31 C.F.R. Part 589, implementing the sanctions required by the Ukraine Executive Orders. The conduct described herein was unlawful under the Ukraine Related Sanctions Regulations.

23.     Specifically, absent permission from OFAC in the form of a license, the Ukraine Related Sanctions Regulations prohibited, among other things: all transactions prohibited pursuant to the Ukraine Executive Orders, including the provision of services by U.S. persons for individuals and entities designated pursuant to the Ukraine Executive Orders and listed on the List of Specially Designated Nationals ("SDN") and Blocked Persons (SDN list).

### C.     Entities and Individuals Sanctioned

24.     On May 18, 2011, OFAC designated Syrian President Assad and the Syrian regime for human rights abuses, including repression of the Syrian people.

25.     Ports Banias and Tartous, Syria were major ports used by the Syrian government to import and export oil.

26.     The government-owned Syrian Company for Oil Transport ("SCOT") acted as the Port Authority for Ports Banias and Tartous. On August 18, 2011, OFAC designated SCOT pursuant to Executive Order 13582, for managing Syria's oil export/import terminals at Ports Banias and Tartous.

27.     The government-owned Banias Refinery Company was responsible for processing oil imported into Port Banias. On May 8, 2014, OFAC designated the Banias Refinery Company, pursuant to Executive Order 13582, for processing petroleum that was imported into the Syrian Port of Banias. The designation noted that the Syrian regime used Port Banias to illicitly import millions of dollars' worth of energy products including petroleum gas and gasoil.

28.     The government-owned Syrian Shipping Agencies Company ("SHIPCO") acted as the Port Agent for shipments into Ports Banias and Tartous. On August 3, 2015, OFAC designated SHIPCO pursuant to Executive Order 13582, for being property in which the Government of Syria had an interest.

29.     JOINT STOCK COMPANY Sovfracht ("Sovfracht") was a Russian shipping company and freight forwarder. According to Sovfracht, it focused on providing transport and logistics services with a focus on rail transportation, overseas shipping, and oil products. Freight forwarders organize shipments for individuals or corporations to get goods from the manufacturer or producer to a market.

30.     On September 1, 2016, OFAC designated Sovfracht pursuant to the Ukraine Executive Orders, because the company operated in the Crimea region of Ukraine. The designation prohibited Sovfracht from engaging in any U.S. dollar transactions that occurred in whole or in part in the United States, and prohibited any good, technology, or services from being exported, re-exported, sold or supplied, directly or indirectly, from the United States to Sovfracht. This prohibition prevented Sovfracht from engaging in U.S. dollar wire transactions, which transited through the U.S. financial system, whether or not the wire transactions related to Crimea.

31.     On or about September 9, 2016, the government sent notice of a forfeiture action of approximately $2,585,340.45, which funds OFAC had blocked when Sovfracht wired the funds through the United States financial system to Cypriot Company Petrolina (Holdings) Public Ltd, as part of a scheme to send jet fuel to Port Banias, Syria. The forfeiture action noted that such U.S. dollar payments were in violation of IEEPA and money laundering laws.

32.     Transpetrochart CO. LTD. ("Transpetrochart") was a Russian based vessel operator. Transpetrochart has owned and operated the MUKHALATKA and YAZ, both of which

are petroleum tankers that Sovfracht used to ship fuel to Syria. On December 20, 2016, OFAC designated Transpetrochart pursuant to Executive Order 13685 for working with Sovfracht. The designation prohibited Transpetrochart from engaging in any U.S. dollar transactions that occurred in whole or in part in the United States, and prohibited any good, technology, or services from being exported, re-exported, sold or supplied, directly or indirectly, from the United States to Transpetrochart. This prohibition prevented Transpetrochart from engaging in U.S. dollar wire transactions, which transited through the U.S. financial system, whether or not the wire transactions related to Sovfracht or Crimea.

33.     The Syrian Sanctions, as well as the subsequent designation of the Banias Refinery Company, also prohibited Sovfracht and Transpetrochart from transporting petroleum into Port Banias and using the Banias Refinery Company, where any related wire transaction transited the United States financial system.

34.     On June 12, 2018, the U.S. Attorney's Office in the District of Columbia indicted five Sovfracht employees, identified as Ivan Okorokov, Karen Stepanyan, Ilya Loginov, Alexy Konkov, and Liudmila Shmelkova as well as three individuals in Syria who assisted Sovfracht to circumvent U.S. sanctions against Sovfracht and Syria, identified as Yaser Naser, Farid Bitar, and Gabriel Bitar.

**B.     <u>Sovfracht Began Using Maritime Assistance to Wire Funds After Designation</u>**

35.     After Sovfracht's designation, it stopped sending U.S. dollar wires through correspondent accounts.  At the same time, Maritime Assistance LLC ("MARITIME") began sending U.S. dollar wires through correspondent accounts, as depicted in the following chart:



36.     Many of the wire transfers sent by MARITIME referenced contracts negotiated by Sovfracht and on many of these wire transfers MARITIME listed the contract number and the date the contract was negotiated.   Additionally, many of the wire transfers listed "Assig.Agr", "Assignm.agr" or "Assign.agr", which is short for "Assignment Agreement."

37.     One Company which dealt with both Sofvracht and Maritime Assistance provided an assignment agreement involving these parties.   The assignment agreement listed Maritime Assistance as a "substitute debtor" for Sovfracht, indicating that Maritime Assistance was merely paying Sovfracht's debt on behalf of Sovfracht.

38.     Between January 1, 2016 and September 1, 2016 (the date when OFAC designated Sovfracht), Sovfracht sent or received approximately 324 wires worth approximately $54,784,416.

39.     Between September 28, 2016 and October 3, 2017, Maritime Assistance sent or received approximately 296 wires worth approximately $48,132,774.

40.     Numerous wire transfers provide additional examples of instances  where Sovfracht assigned its U.S. dollar debts to Maritime Assistance.  In all of these instances, Sovfracht was prohibited from sending U.S. dollars, making these transfers a violation of the sanctions against Sovfracht.

**C.** **Sovfracht's Post-Designation Ship-to-Ship Transfers Paid in U.S. Dollars**

41.    On January 14, 2011, Sovfracht entered into an agreement with a company to provide bunkering services, including the provision of fuel.  This agreement was listed as S/A-14/01/11.

42.    An invoice dated October 31, 2016 between this company and Maritime Assistance listed "Ships bunker supply Agreement S/A-14/01/11 dated 14 January 2011" on the bottom of the form.  The invoice was for 4,987.993 metric tons of jet fuel that was loaded onto a petroleum tanker ("Petroleum Tanker 1") on October 1, 2016.   On September 30, 2016, petroleum tanker Mukhalatka received instructions to receive 5 kilotons of jet fuel from Petroleum Tanker 1 via a ship-to-ship transfer.

43.    A separate invoice to Maritime Assistance dated December 8, 2016, revealed a transfer of 9,965.708 metric tons of jet fuel to a petroleum tanker ("Petroleum Tanker 2") on November 13, 2016 for $5,227,013.85, which listed order number 347309.  Maritime Assistance wired U.S. dollars, which transited through the United States, for this order in two installments of $2,601,516.85 on December 9, 2016 and $2,625,496.99 on December 12, 2016.  On November 25, 2016, the captain of petroleum tanker Mukhalatka emailed indicted Sovfracht employees documents showing that the petroleum tanker Mukhalatka received 5005.714 metric tons of jet fuel from Petroleum Tanker 2 on or about November 21, 2016, reflecting Sovfracht's involvement in this shipment.  The Captain of the petroleum tanker Mukhalatka also sent a document showing that the petroleum tanker Mukhalatka arrived at Port Banias on November 23, 2016 and was ready to discharge 5005.714 metric tons of jet fuel.

44.    Another invoice to Maritime Assistance dated May 31, 2017, revealed a transfer of 5,058.671 metric tons of jet fuel delivered to the petroleum tanker Yaz, which was owned by

OFAC designated Transpetrochart, and as such was a violation of the sanctions against Sovfracht and Transpetrochart, on May 15, 2017 for $2,978,849.01.  On May 15, 2017, the Captain of the petroleum tanker Yaz emailed Sovfracht employee Ivan Okorokov the bill of lading for 5,058.671 metric tons of jet fuel, again reflecting Sovfracht's involvement with this shipment.

## II.      SHIP-TO-SHIP TRANSFERS INVOLVING A FOREIGN TRADING COMPANY

45.      On October 28, 2016, a Sovfracht employee emailed two employees of a foreign trading company ("Company 1") a contract between Maritime Assistance and Company 1.  Later that day, the Sovfracht employee received provisional invoice between Company 1 and Maritime Assistance, for the sale of 5,000.00 metric tons of gasoil valued at $2,656,250.00.

46.      On March 10, 2017, a Sovfracht employee asked an employee of Company 1 about loading 5000 metric tons of Jet A-1 onto the petroleum tanker Mukhalatka.  The Sovfracht employee stated: "Loading possible only in Turkey ports (her Owner in OFAC list)."

47.      On April 5, 2017, Company 1 employee emailed a Sovfracht employee instructions on how to communicate about the delivery of 5000 metric tons of Jet A1 fuel.  The instructions indicated that the Company 1 employee wanted to receive updates about the shipment at an alias email address.

48.      On April 7, 2017, a Sovfracht employee emailed the alias email address for the Company 1 employee a receipt of two payments of $1,373,592.58 on April 5, 2017 and $1,373,592.59 on April 6, 2017, from Maritime Assistance to Company 1, which listed the contract number in the remittance information.

49.      In total, Maritime Assistance wired Company 1 at least $7,830,168.66 for petroleum products between October 2016 and May 2017.  These U.S. dollar wires were for the

benefit of Sovfracht, which was designated by OFAC at this time and as such were a violation of the sanctions against Sovfracht.

50.     Records from a European petroleum bunkering company ("Company 2") revealed that Maritime Assistance contacted Company 2 in December 2016 to purchase 4,989.604 metric tons of Jet A1 from Company 1.  Company 2 wired $2,910,036.84 to Company 1 on January 18, 2017 for this petroleum.  Company 2 then assisted Maritime Assistance to conduct a ship-to-ship transfer of the petroleum to the petroleum tanker Yaz, which was owned by OFAC designated Transpetrochart, and as such was a violation of the sanctions against Sovfracht and Transpetrochart.

51.     In total, Company 1 was a party to at least $10,740,205.50 in wires and attempted wires related to the above-described illegal scheme.

## III.    DEFENDANT FUNDS FROM MARITIME ASSISTANCE TO COMPANY 1, TRACEABLE TO DESIGNATED ENTITY AT PORT BANIAS, SYRIA

52.     The Defendant Funds are two wire payments from Maritime Assistance to Company 1 for $1,478,991.75 on May 10, 2017 and $1,478,991.74 on May 11, 2017.  Both of these payments are held at U.S. Bank 1.

53.     The bank to bank instructions on these payments listed contract and invoice numbers used by Maritime Assistance and Company 1.

54.     On April 20, 2017, a Company 1 employee sent a Sovfracht employee an invoice, which stated that it was for 5,047.495 metric tons of Jet A-1 valued at $2,957,983.49.

55.     This amount is equal to the value of the Defendant Funds.

56.     On May 2, 2017, Farid Bitar, the indicted petroleum inspector at Port Banias, Syria, emailed that the petroleum tanker Mukhalatka delivered 5,047.495 metric tons of Jet A-1 to Port Banias, Syria on April 26, 2017, which is the exact amount of fuel that invoice 117/A listed.  The

Jet A-1 fuel was inspected by the Banias Refinery Company, which was designated when they conducted the inspection and remains designated by OFAC.

57.     A Sovfracht employee subsequently emailed information about the blocking of the Defendant Funds to other Sovfracht employees.   In response, a Sovfracht employee stated in Russian, "MA [Maritime Assistance] has been burned, i.e. It's unadvisable to make further use of it.  Small payments from MA in dollars may go through for a while, but we can't risk sending large payments.  We've got to create a new (1 or more) clean company."

## COUNT ONE – FORFEITURE

### (18 U.S.C. § 981(A)(1)(C))

58.     The United States incorporates by reference the allegations set forth in Paragraphs 1 to 57 above as if fully set forth herein.

59.     Sovfracht, Maritime, and others known and unknown acted individually and conspired together to conduct the above identified illegal procurements, payments, and exports, in violation of IEEPA, specifically 50 U.S.C. § 1705 et seq. and the conspiracy statute, 18 U.S.C. § 371.

60.     As such, the Defendant Funds are subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C), as property which constitutes or is derived from proceeds traceable to a conspiracy to violate IEEPA.

## COUNT TWO – FORFEITURE

### (18 U.S.C. § 981(A)(1)(A))

61.     The United States incorporates by reference the allegations set forth in Paragraphs 1 to 57 above as if fully set forth herein.

62.     Sovfracht, Maritime, and others known and unknown acted individually and conspired to transmit and transfer the Defendant Funds to a place inside the United States from or through a place outside the United States, with the intent to promote the carrying on of violations of the penalties of IEEPA, in violation of 18 U.S.C. §§ 1956(h), 1956(a)(2)(A).

63.     As such, the Defendant Funds are subject to forfeiture to the United States, pursuant to 18 U.S.C. § 981(a)(1)(A), as property involved in transactions in violation of 18 U.S.C. § 1956(h), 1956(a)(2)(A), or as any property traceable to such property.

## PRAYER FOR RELIEF

WHEREFORE, the United States of America prays that notice issue to the defendant properties as described above; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring that the defendant property be forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: December 28, 2018

Respectfully submitted,

JESSIE K. LIU
United States Attorney

By: _____/s/_____
ZIA M. FARUQUI, D.C. Bar No. 494990
ARVIND K. LAL,
BRIAN P. HUDAK,
Assistant United States Attorneys
555 Fourth Street, NW
Washington, DC 20530
(202) 252-7566 (main line)

*Attorneys for the United States of America*

## **<u>VERIFICATION</u>**

I, Samuel Small, a Special Agent with the Federal Bureau of Investigation, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing Verified Complaint for Forfeiture *In Rem* is based upon reports and information known to me and/or furnished to me by other law enforcement representatives and that everything represented herein is true and correct.

Executed on this <u>28th</u> day of December, 2018.


_____<i>/s/</i>_____
Samuel Small
Special Agent
Federal Bureau of Investigation

# CIVIL COVER SHEET

JS-44 (Rev. 5/12 DC)

## I. (a) PLAINTIFFS

United States of America
c/o U.S. Attorney's Office
555 Fourth Street, N.W.
Washington, D.C. 20530    [+]

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
**(EXCEPT IN U.S. PLAINTIFF CASES)**

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Zia M. Faruqui (202) 252-7117
Arvind K. Lal (202) 252-7965
Assistant United States Attorneys
555 4th Street, N.W., 11th Floor
Washington, DC 20530    [+]

## DEFENDANTS

$1,478,991.75 OF FUNDS IN THE NAME OF MARITIME ASSISTANCE LLC., and $1,478,991.74 OF FUNDS IN THE NAME OF MARITIME ASSISTANCE LLC.

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

(●) 1 U.S. Government
Plaintiff

( ) 2 U.S. Government
Defendant

( ) 3 Federal Question
(U.S. Government Not a Party)

( ) 4 Diversity
(Indicate Citizenship of
Parties in item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ( ) 1 | ( ) 1 | Incorporated or Principal Place of Business in This State | ( ) 4 | ( ) 4 |
| Citizen of Another State | ( ) 2 | ( ) 2 | Incorporated and Principal Place of Business in This State | ( ) 5 | ( ) 5 |
| Citizen or Subject of a Foreign Country | ( ) 3 | ( ) 3 | Foreign Nation | ( ) 6 | ( ) 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
**(Place an X in one category, A-N, that best represents your Cause of Action and one in a corresponding Nature of Suit)**

( ) **A.** *Antitrust*

[ ] 410  Antitrust

( ) **B.** *Personal Injury/ Malpractice*

[ ] 310 Airplane
[ ] 315 Airplane Product Liability
[ ] 320 Assault, Libel & Slander
[ ] 330 Federal Employers Liability
[ ] 340 Marine
[ ] 345 Marine Product Liability
[ ] 350 Motor Vehicle
[ ] 355 Motor Vehicle Product Liability
[ ] 360 Other Personal Injury
[ ] 362 Medical Malpractice
[ ] 365 Product Liability
[ ] 367 Health Care/Pharmaceutical Personal Injury Product Liability
[ ] 368 Asbestos Product Liability

( ) **C.** *Administrative Agency Review*

[ ] 151 Medicare Act

**Social Security**
[ ] 861 HIA (1395ff)
[ ] 862 Black Lung (923)
[ ] 863 DIWC/DIWW (405(g)
[ ] 864 SSID Title XVI
[ ] 865 RSI (405(g))
**Other Statutes**
[ ] 891 Agricultural Acts
[ ] 893 Environmental Matters
[ ] 890 Other Statutory Actions (If Administrative Agency is Involved)

( ) **D.** *Temporary Restraining Order/Preliminary Injunction*

**Any nature of suit from any category may be selected for this category of case assignment.**

*\*(If Antitrust, then A governs)\**

(●) **E.** *General Civil (Other)*    OR    ( ) **F.** *Pro Se General Civil*

**Real Property**
[ ] 210 Land Condemnation
[ ] 220 Foreclosure
[ ] 230 Rent, Lease & Ejectment
[ ] 240 Torts to Land
[ ] 245 Tort Product Liability
[ ] 290 All Other Real Property

**Personal Property**
[ ] 370 Other Fraud
[ ] 371 Truth in Lending
[ ] 380 Other Personal Property Damage
[ ] 385 Property Damage Product Liability

**Bankruptcy**
[ ] 422 Appeal 27 USC 158
[ ] 423 Withdrawal 28 USC 157

**Prisoner Petitions**
[ ] 535 Death Penalty
[ ] 540 Mandamus & Other
[ ] 550 Civil Rights
[ ] 555 Prison Conditions
[ ] 560 Civil Detainee – Conditions of Confinement

**Property Rights**
[ ] 820 Copyrights
[ ] 830 Patent
[ ] 840 Trademark

**Federal Tax Suits**
[ ] 870 Taxes (US plaintiff or defendant)
[ ] 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
[ ] 625 Drug Related Seizure of Property 21 USC 881
[x] 690 Other

**Other Statutes**
[ ] 375 False Claims Act
[ ] 400 State Reapportionment
[ ] 430 Banks & Banking
[ ] 450 Commerce/ICC Rates/etc.
[ ] 460 Deportation
[ ] 462 Naturalization Application
[ ] 465 Other Immigration Actions
[ ] 470 Racketeer Influenced & Corrupt Organization

[ ] 480 Consumer Credit
[ ] 490 Cable/Satellite TV
[ ] 850 Securities/Commodities/ Exchange
[ ] 896 Arbitration
[ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
[ ] 950 Constitutionality of State Statutes
[ ] 890 Other Statutory Actions (if not administrative agency review or Privacy Act)

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/Privacy Act* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus – General<br>☐ 510 Motion/Vacate Sentence<br>☐ 463 Habeas Corpus – Alien Detainee | ☐ 442 Civil Rights – Employment (criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loan (excluding veterans) |
| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 740 Labor Railway Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 440 Other Civil Rights<br>☐ 445 Americans w/Disabilities – Employment<br>☐ 446 Americans w/Disabilities – Other<br>☐ 448 Education | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights – Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding  ○ 2 Remand from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi-district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**
18 U.S.C. Sections 981(a)(1)(C)-forfeiture of property constituting or derived from proceeds traceable to ...

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23  **DEMAND $** **JURY DEMAND:** Check **YES** only if demanded in complaint  YES ☐  NO ☒

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☒  NO ☐  If yes, please complete related case form

**DATE:** 12/28/2018  **SIGNATURE OF ATTORNEY OF RECORD** /s/ Zia M. Faruqui

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
**Authority for Civil Cover Sheet**

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and services of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the cover sheet.

**I.** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff if resident of Washington, DC, 88888 if plaintiff is resident of United States but not Washington, DC, and 99999 if plaintiff is outside the United States.

**III.** CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

**IV.** CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of the case.

**VI.** CAUSE OF ACTION: Cite the U.S. Civil Statute under which you are filing and write a brief statement of the primary cause.

**VIII.** RELATED CASE(S), IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should endure the accuracy of the information provided prior to signing the form.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| $1,478,991.75 OF FUNDS IN THE NAME | ) |
| OF MARITIME ASSISTANCE LLC.; and | ) |
| | ) |
| $1,478,991.74 OF FUNDS IN THE NAME | ) |
| OF MARITIME ASSISTANCE LLC., | )          Civil Action No. _____ |
| | ) |
| Defendants In Rem.. | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |

## **WARRANT FOR ARREST _IN REM_**

TO:   THE UNITED STATES MARSHAL'S SERVICE AND/OR ANY OTHER DULY
AUTHORIZED LAW ENFORCEMENT OFFICER:

      WHEREAS a Verified Complaint for Forfeiture _In Rem_ has been filed in the United
States District Court for the District of Columbia, on the 28th day of December, 2018, alleging
that the above defendant properties are subject to seizure and forfeiture to the United States
pursuant to 18 U.S.C. § 981(a)(1);

      YOU ARE, THEREFORE, HEREBY COMMANDED to serve the defendant properties,
thus bringing, within the jurisdiction of the Court, said defendant properties, more fully
described as:

      **$1,478,991.75 OF FUNDS IN THE NAME OF MARITIME ASSISTANCE LLC., and**

      **$1,478,991.74 OF FUNDS IN THE NAME OF MARITIME ASSISTANCE LLC.**

YOU ARE FURTHER COMMANDED, promptly after execution of this process, to file the same in this Court with your return thereon, identifying the individuals upon whom copies were served and the manner employed, unless, pursuant to Rule G(3)(c)(ii)(A) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, the defendant properties are in the government's possession, custody, or control.

Dated: December 28, 2018

_____
Clerk of the Court


By: _____
Deputy Clerk